IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

BILLY W. BAILEY, )
)
Plaintiff, )
)
v. ) Case No. CIV-09-281-FHS
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Billy W. Bailey (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 14, 1956 and was 52 years old at the time of the ALJ's decision. Claimant completed his education through the twelfth grade. Claimant worked in the past as a sawmill laborer, sawmill worker, and forklift operator. Claimant

3

alleges an inability to work beginning September 2, 2005 due to sleep apnea, restless leg syndrome, shoulder problems, pain and numbness in the arms, back and leg problems, bilateral foot pain, vision loss in the right eye, obesity, heart problems, kidney problems, medication side effects, depression, and problems with memory, concentration, following instructions, handling stress, and being around other people.

## Procedural History

On September 7, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 1, 2007, an administrative hearing was held before ALJ Michael J. Kirkpatrick in Paris, Texas. On May 1, 2008, the ALJ issued an unfavorable decision on Claimant's application. On April 14, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential

evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") sufficient to perform his past relevant work as a sawmill worker and forklift operator.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) improperly rejecting and weighing the opinions of Claimant's treating physician; (2) failing to consider the opinion of the state agency physician; and (3) engaging in an improper RFC analysis.

### Evaluation of the Treating Physician's Opinions

Claimant first began experiencing back pain after an on-the-job injury in January of 2000. (Tr. 163). An MRI of the lumbar spine area revealed minimal desiccation of his disks at L4-5 and L5-S1. (Tr. 164). He reached maximum medical improvement with this condition in August of 2000. (Tr. 154).

On January 21, 2003, Claimant sought treatment from Dr. H.G. Weems for bilateral shoulder pain. His left shoulder experienced greater pain than his right. An MRI showed significant arthritic disease in the AC joints bilaterally with inferior spurs causing a moderate amount of impingement. No rotator cuff tears were seen. Claimant was found to have full range of motion but pain past 120° of forward flexion or 90° of abduction. Dr. Weems found

5

impingement sign was mildly positive. (Tr. 170). Dr. Weems recommended Claimant undergo subacromial decompression and distal clavicle excision surgery. Id. After surgery, Claimant reported a resolution to his shoulder pain. (Tr. 168). By September 10, 2003, Claimant was again experiencing pain in his shoulder and was referred by Dr. Weems for shoulder rehabilitation. (Tr. 178).

On September 23, 2003, Claimant was evaluated for bilateral shoulder pain by Dr. Daniel Jones. Dr. Jones noted Claimant had tenderness in his acromioclavicular joint, biceps, and supraspinatus tendons bilaterally. X-rays showed Claimant with bilateral degenerative joint disease. MRI scans showed Claimant with degenerative changes and hypertrophy in the acromioclavicular joints in both shoulders. He was prescribed physical therapy. (Tr. 183-84).

On April 5, 2005, Claimant sought treatment for neck, back, and leg pain as well as headaches after falling at work. X-rays were within normal limits but Claimant's left knee showed mild narrowing of his medial joint space. Claimant was diagnosed with mild degenerative joint disease of the left knee. (Tr. 187-91).

On September 14, 2005, Claimant was attended by Dr. Thomas Salyer, complaining of an inability to sleep. Claimant was diagnosed with a keloid to the left shoulder and sleep apnea. (Tr.

6

194).

On October 18, 2005, Claimant underwent a consultative physical examination by Dr. Gordon B. Strom, Jr. Claimant told Dr. Strom that he suffered from shoulder and leg pain and, as a result, he could not lift his arms above his shoulders and can walk only 10 to 15 feet because of pain. Claimant exhibited a limited range of motion of the cervical spine while complaining of pain. No obvious deformity was found and Claimant could flex and extend his neck but only to about 10 degrees. (Tr. 201). Dr. Strom's impression of Claimant as mild to moderate degenerative joint disease involving the shoulders, back and feet, prior history of chest pain some two years ago without sequelae, possible narcolepsy with Ritalin therapy, limited education with limited skills, history consistent with hiatal hernia, possible peripheral neuropathy, and limited visual acuity with traumatic scarring of the right cornea. (Tr. 202).

In range of motion testing, Dr. Strom found Claimant had reduced range of motion in the areas of back extension of 20 degrees, back lateral flexion left and right of 20 degrees, hip extension left and right of 20 degrees, hip abduction left and right of 20 degrees, shoulder abduction left in supination and right in supination of 90 degrees, shoulder left and right forward

7

elevation of 90 degrees, and shoulder abduction left of 10 degrees. (Tr. 203-04).

Claimant was evaluated extensively in October and November of 2005 for sleep problems. (Tr. 218-19, 220-21, 227-28, 237-38).

On February 9, 2006, Dr. R. J. Langerman attended Claimant for foot pain. X-rays showed traction spurs on both feet and Dr. Langerman diagnosed Claimant with bilateral plantar fascitis. He recommended Claimant to undergo orthotripsy on both heels, continue with orthotics, and an exercise program. (Tr. 251-52). On March 13, 2006, Dr. Langerman performed an open plantar fascia release with first branch decompression on Claimant's left heel. (Tr. 253-54). Dr. Langerman recommended the same procedure be performed on the right heel. (Tr. 249).

On March 1, 2006, Dr. Salyer completed a Handicapped Parking Placard Application for Claimant. Dr. Salyer checked the box on the application indicating Claimant "cannot walk two hundred (200) feet without stopping to rest." He also indicated Claimant "is severely limited in his . . . ability to walk due to an arthritic, neurological, or orthopedic condition." He showed Claimant suffered from osteoarthritis. A five year placard was requested. (Tr. 287).

In his decision, the ALJ indicated Claimant suffered from the

severe impairments of osteoarthritis, sleep apnea, and affective mood disorder. (Tr. 28). However, he concluded Claimant retained the RFC to perform his past relevant work as a sawmill worker and forklift operator. (Tr. 34). While the ALJ extensively cited to the medical record and the various opinions contained therein, he did not reference Dr. Salyer's statements in the placard application. Indeed, the ALJ specifically determined, erroneously as it turns out, that Dr. Salyer "neither placed nor recommended any type of limitation upon the claimant's activities." (Tr. 33).

The record reveals Dr. Salyer's status as one of Claimant's treating physicians. In evaluating the opinions of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still

9

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ in this case failed to reference Dr. Salyer's opinion contained in the placard application on Claimant's limitations in his decision. The form of the opinion is not relevant as long as the opinion has some basis in the medical record. The Commissioner attempts to explain reasons that a remand for consideration of the statements on the application. All fall short as post hoc justification for the ALJ's ignoring of Dr. Salyer's opinion and cannot now form the basis for the ALJ's deficiency. The ALJ must make the findings in his decision. Franz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007). On remand, the ALJ shall consider Dr. Salyer's opinion set out on the placard application.

**State Agency Physician's Opinion and the ALJ's RFC Assessment**

On December 19, 2005, Dr. Shafeek Sanbar completed a Physical Residual Functional Capacity Assessment form with regard to Claimant. He concluded Claimant was limited to occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking about 6 hours in an 8 hour workday, and sitting about 6 hours in an 8 hour workday. (Tr. 208). These findings were consistent with an RFC limiting Claimant to light work. The ALJ's step four conclusion that Claimant could perform his past relevant work indicates an ability to perform at a medium exertional level, according to the vocational expert

employed in this case. (Tr. 29, 372-76). The ALJ only generally mentioned the state agency physicians in his decision, stating they supported a finding of "not disabled." (Tr. 34). On remand, the ALJ shall re-evaluate Claimant's RFC and explain the weight given to Dr. Sanbar's opinions and the basis for such.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of September, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

12